IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE

| | |
|---|---|
| AUTO-OWNERS (MUTUAL) INSURANCE COMPANY, )<br>)<br>Plaintiff / Counter-Defendant, )<br>)<br>v. )<br>)<br>BEN REARDON, )<br>)<br>Defendant / Counter-Plaintiff. ) | No. 2:21-cv-02082<br>District Judge Lipman<br>Magistrate Claxton |

**DEFENDANT/COUNTER-PLAINTIFF'S MEMORANDUM OF LAW
IN SUPPORT OF MOTION TO COMPEL**

COMES NOW the Defendant/Counter-Plaintiff, Ben Reardon ("Mr. Reardon"), by and through counsel, and submits this Memorandum in Support of Motion to Compel, respectfully stating as follows:

### I. INTRODUCTION

This is a simple insurance case. Mr. Reardon, an individual homeowner, was sued by the insurer of his home, Auto-Owners (Mutual) Insurance Company ("Auto-Owners"), after the home was struck by a severe wind and hailstorm in April 2019. Although the parties mutually agreed to submit the claim to appraisal and the Appraisal Award was agreed to by both parties' appraisers, Auto-Owners refused to honor its contractual obligations, and instead, sued Mr. Reardon in an action for declaratory judgment.

As part of this litigation, Mr. Reardon served written discovery requests and received responses, but Auto-Owners withheld several documents based on an alleged work-product privilege. Specifically, Auto-Owners withheld a pre-suit (and pre-appraisal) adjuster report and

related correspondence with an independent adjuster, and it redacted some claim notes concerning its internal analysis of Mr. Reardon's claim. Auto-Owners has asserted that it reasonably anticipated litigation when these documents were created and that the work product doctrine protects them from disclosure, yet two of the documents were created over a year before appraisal was even conducted, which makes this argument questionable, at best. What is more, appraisal is an alternative dispute resolution process designed specifically to avoid litigation and court involvement. After consultation between counsel for Auto-Owners and Mr. Reardon, Auto-Owners still refuses to produce these relevant and discoverable documents. As such, Mr. Reardon seeks to compel their production.

## II.  RELEVANT FACTS & BACKGROUND

### A.  The Loss and Mr. Reardon's Claim

Mr. Reardon is an insured policyholder who owns a home in Memphis, Tennessee with a unique, nearly 100-year old clay-tile roof (the "Insured Premises"). On April 15, 2019, a severe wind and hailstorm struck the Insured Premises, causing substantial damage to the roof and other exterior components. Pursuant to the terms of his insurance contract with Auto-Owners, Mr. Reardon promptly reported the Loss and made a claim for the substantial roof damage. Auto-Owners inspected the Insured Premises and provided coverage for the Loss. To that end, Auto-Owners made a partial payment for the loss and damage, but its payment to date represents only a fraction of the amount owed.

### B.  The Appraisal Demand and Award

When Mr. Reardon realized that this payment was grossly insufficient to repair his home's roof, he invoked the appraisal provision of the insurance policy on October 17, 2019. And, on November 8, 2019, Mr. Reardon named Toby Johnson of Omega Building Consultants as his

appraiser. Auto-Owners agreed to appraisal, and ultimately named Mr. Jonathan Clements as its appraiser in early 2020. The appraisal process was delayed several times by Auto-Owners, but it was eventually conducted in December 2020. At that time, Mr. Clements and Mr. Johnson agreed on the amount of the Loss to Mr. Reardon's home without the need for an appraisal umpire. Specifically, they agreed that the amount of the Loss was $238,432.47 on a replacement cost value basis and $152,182.27 on an actual cash value basis. The appraisers both signed the Appraisal Award on December 21, 2020. (*See* DE# 1-2, Appraisal Award dated December 21, 2020).

   **C.**  **The Lawsuit Against Mr. Reardon & The Discovery Dispute**

After the Appraisal Award was issued, Mr. Reardon asked Auto-Owners to pay the Award. Instead of doing so, however, Auto-Owners filed a Complaint against Mr. Reardon on February 4, 2021, seeking a declaratory judgment from this Court that it is not required to pay the Appraisal Award. When discovery commenced, Mr. Reardon propounded his First Set of Interrogatories and Requests for Production of Documents to Auto-Owners on March 4, 2021. Then, on March 24, 2021, Auto-Owners submitted its responses to Mr. Reardon's discovery requests, including a Privilege Log withholding certain documents, in part, on the basis of alleged work product protections. (*See* Plaintiff's Privilege Log, dated March 24, 2021, attached as ***Exhibit 1***).

In response, on April 14, 2021, undersigned counsel emailed Auto-Owners' attorneys to explain that, in general, an insurer's coverage decisions, coverage analyses, and claim investigations are part of the normal and ordinary business of an insurance company, and that documents created in that ordinary course are not generally protected from discovery. (*See* Email from Jonathan Bobbitt to Ben Goldammer and Michael Johnson, dated April 14, 2021, raising discovery dispute concerning privilege log, attached as ***Exhibit 2***). Notably, undersigned counsel advised that he had no objection to any documents withheld on the basis of the attorney-client

privilege. (*See Id.*). Rather, the issues raised within the email concerned only the alleged work product protections for documents created during Auto-Owners' claim investigation.

On May 6, 2021, undersigned counsel followed up with Auto-Owners' attorneys concerning this discovery dispute. (*See* Email from Jonathan Bobbitt to Michael Johnson, dated May 6, 2021, following up on discovery dispute, attached as ***Exhibit 3***). Auto-Owners responded on May 18, 2021, stating that its withholdings constituted work product because Auto-Owners "reasonably anticipated litigation based on the hiring of a public adjuster and the nature of the claim." (*See* Email from Michael Johnson to Jonathan Bobbitt, dated May 18, 2021, confirming work product position, attached as ***Exhibit 4***). This Motion followed.

### III.   THE IMPROPERLY WITHHELD DOCUMENTS AT ISSUE

This Court should enter an Order compelling Auto-Owners to produce the documents withheld and/or redacted in its Privilege Log based on an alleged, and improper, work product protection. Specifically, Mr. Reardon seeks to compel production of the following:

1.   October 21, 2019 adjuster internal report prepared by Jacob Flippin;

2.   April 22, 2019 correspondence from Plaintiff to Donan regarding analysis of claim; and

3.   Redactions in the claim notes regarding … Plaintiff's analysis of this matter.

(*See* Plaintiff's Privilege Log, dated March 24, 2021, attached as ***Exhibit 1***).

The specific, disputed discovery requests at issue are numerous, as many of Mr. Reardon's written discovery requests implicate these withheld documents. Pursuant to the Local Rules, the discovery responses at issue are also attached hereto as ***Exhibit 5*** (Relevant Portions Only Per Local Rules – Highlighted). However, for ease of reference and the Court's convenience, the discussion in this Motion concerns the above-referenced documents withheld in Auto-Owners' Privilege Log.

4

## IV. LAW & ARGUMENT

Mr. Reardon moves this Court for entry of an Order compelling Auto-Owners to produce the documents withheld in its Privilege Log based on its alleged work product privilege. As explained herein, courts have routinely held that there is no initial contemplation of litigation when an insurer begins investigation of a first-party insurance claim. Indeed, making coverage decisions and other claim determinations is part of the ordinary course of an insurer's business, and accordingly, are not protected as work product. This is further underscored by the fact that two of the withheld documents were created in April 2019 and October 2019, over a year before the parties completed appraisal. Even more, public adjusters (like independent adjusters hired by insurance companies) are routinely hired to assist Tennessee policyholders with their insurance claims, and the vast majority of those claims never result in, or even come close to, litigation.

Auto-Owners' attempt to establish some sort of bright-line rule that the presence of an adjuster creates a reasonable expectation of litigation is nothing more than an attempt to create a shield behind which insurance companies can hide their discoverable claims analyses, which oftentimes contains the evidence of bad faith and unfair practices. Consequently, this Court should hold that the work product doctrine does not apply to these documents, that they are discoverable under the law, and accordingly, compel Auto-Owners to produce the withheld documents.

### A. GENERAL PRINCIPLES GOVERNING DISCOVERY & THE WORK PRODUCT DOCTRINE

The scope of discovery is governed by Federal Rule of Civil Procedure 26, which provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case[.]" Fed. R. Civ. P. 26(b)(1). A party "seeking discovery is obligated to demonstrate relevance." *Nieves v. Baptist Mem'l Med. Grp., Inc.*, No. 18-2748-JTF, 2020 U.S. Dist. LEXIS 109742, at *3 (W.D. Tenn. June 23, 2020)

(citing *Johnson v. CoreCivic, Inc.*, No. 18-CV-1051-STA-tmp, 2019 U.S. Dist. LEXIS 176284, 2019 WL 5089086, at *2 (W.D. Tenn. Oct. 10, 2019)). Once a party demonstrates relevance, the "burden shifts to the party opposing discovery to show, with specificity, why the requested discovery is not proportional to the needs of the case." *Id.* (citations omitted). "The scope of discovery is, of course, within the broad discretion of the trial court." *Lewis v. ACB Business Servs., Inc.*, 135 F.3d 389, 402 (6th Cir. 1998). However, "[o]n notice to other parties and all affected persons, a party may move for an order compelling disclosure or discovery." *See* Fed. R. Civ. P. 37(a)(1).

Additionally, the work product doctrine under Fed. R. Civ. P. 26(b)(3) "protects 'documents and other materials … prepared … by or for another party or by or for that other party's representative …'" *Martin v. Bally's Park Place Hotel & Casino*, 983 F.2d 1252, 1261 (3d Cir. 1993) (citing Fed. R. Civ. P. 26(b)(3)). However, "[i]n order to qualify for protection under the work product doctrine, the material in question must: 1) be a document or tangible thing, 2) which was prepared in anticipation of litigation, and 3) was prepared by or for a party, or by or for its representative." *Amica Mut. Ins. Co. v. W.C. Bradley Co.*, 217 F.R.D. 79, 83 (D. Mass. 2003) (citing Fed. R. Civ. P. 26(b)(3)).

    **B.    THIS COURT SHOULD COMPEL PRODUCTION OF THE DOCUMENTS WITHHELD IN AUTO-OWNERS' PRIVILEGE LOG BECAUSE THEY WERE MADE AS PART OF ITS ROUTINE INVESTIGATION INTO MR. REARDON'S CLAIM**

Courts have routinely held that there is no initial contemplation of litigation when an insurer begins investigation of a first-party insurance claim. That is, "[w]hen an insured presents a first party claim, he is asking for payment under the terms of the insurance contract between him and the insurance company, and the insurance company owes him a duty to adjust his claim in good faith. There is no initial contemplation of litigation." *Weitzman v. Blazing Pedals, Inc.*, 151

F.R.D. 125, 126 (D. Colo. 1993). And, "documents created by [an insurer, its representative, or a claims adjuster] tend not to be protected by the work product doctrine if they were prepared as a 'more or less routine investigation of a possibly resistible claim.'" *Norman v. Odyssea Marine, Inc.*, No. 13-6690, 2014 U.S. Dist. LEXIS 69063, at *11-12 (E.D. La. May 20, 2014) (citing *Kansas City S. Ry. Co. v. Nichols Const. Co., L.L.C.*, No. 05-1182, 2007 U.S. Dist. LEXIS 62928, 2007 WL 2461014 (E.D. La. Aug. 27, 2007); *Tejada Fashions Corp. v. Yasuda Fire and Marine Ins. Co. (U.K.), Ltd.*, 1984 U.S. Dist. LEXIS 15815, 1984 WL 500, at * 3 (S.D.N.Y. 1984)); *see also In re Professionals Direct Ins. Co.*, 578 F.3d 432, 439 (6th Cir. 2009) ("[m]aking coverage decisions is part of the ordinary business of insurance and if the 'driving force' behind the preparation of these documents was to assist [the insurer] in deciding coverage, then they are not protected by the work-product doctrine."); *Pete Rinaldi Fast Foods, Inc. v. Great American Ins. Co.*, 123 F.R.D. 198, 202 (M.D. N.C. 1988) ("[a]n insurance company cannot reasonably argue that the entirety of its claims files are accumulated in anticipation of litigation when it has a duty to investigate, evaluate and make a decision with respect to the claims made on it by its insured").

To that end, "[c]overage investigations by insurance companies are not per se conducted in anticipation of litigation, and a determination as to whether documents generated during such investigations were prepared in anticipation of litigation, as opposed to in the ordinary course of business, should be made on a case-by-case basis." *Amica*, 217 F.R.D. at 83; accord *Galvin v. Pepe*, No. 09-cv-104-PB, 2010 U.S. Dist. LEXIS 82119, 2010 WL 2720608, at *4 (D.N.H. July 8, 2010). That is because:

> unless and until an insurance company can demonstrate that it reasonably considered a claim to be more likely than not headed for litigation, the natural inference is that the documents in its claims file that predate this realization were prepared in the ordinary course of business, i.e., the business of providing insurance coverage to insureds.

*Gail Jones v. Secord*, No. 11-91101-PBS, 2011 U.S. Dist. LEXIS 63486, at *8 (D. Mass. June 15, 2011) (quoting *S.D. Warren Co. v. E. Elec. Corp.*, 201 F.R.D. 280, 285 (D. Me. 2001)).

Other courts have also found that "[i]f the document ***would have been created regardless of whether the litigation was also expected*** to ensue, the document is ***deemed to be created in the ordinary course of business and not in anticipation of litigation***." *Odyssea Marine, Inc.*, 2014 U.S. Dist. LEXIS 69063, at *10-11 (emphasis added) (citing *Piatkowski v. Abdon Callais Offshore, L.L.C.*, No. 99-3759, 2000 U.S. Dist. LEXIS 12067, 2000 WL 1145825, at *1 (E.D.La. Aug, 11, 2000); *Southern Scrap Material Co. v. Fleming*, 2003 U.S. Dist. LEXIS 10815, 2003 WL 2147516, at *6 (E.D. La. June 18, 2003)); *see also Caremark Inc., v. Affiliated Computer Serv. Inc.*, 195 F.R.D. 610, 616 (N.D. Ill. 2000) ("[i]f a document would have been created regardless of whether litigation was anticipated or not, it is not work product."); *Guidry v. Jen Marine LLC*, 2003 U.S. Dist. LEXIS 15272, 2003 WL 22038377 *5 (E.D. La. Aug. 22, 20003) ("if the party asserting the privilege cannot make a factual showing that the primary purpose of the insurance investigation was in anticipation of litigation, the court may conclude that the investigation was conducted in the ordinary course of investigating a potential insurance claim.").

Finally, courts consider certain factors in determining whether a document was made in anticipation of litigation, "including whether (1) counsel had been retained, (2) the retained counsel was involved in the generation of the document, and (3) the document was created out of a 'routine practice' or in connection with particular circumstances." *Odyssea Marine*, U.S. Dist. LEXIS 69063, at *10 (citing *Hercules Liftboat Co., L.L.C. v. Rice*, 2012 U.S. Dist. LEXIS 141904, 2012 WL 4483557, at *1 (W.D. La. Sept. 26, 2012)).

Here, the first withheld document is an October 21, 2019 adjuster internal report prepared by Jacob Flippin, the Auto-Owners Field Claims Representative originally assigned to the claim.

(*See* Plaintiff's Privilege Log, dated March 24, 2021, at (Second) No. 1, attached as ***Exhibit 1***). This document was created as part of Auto-Owners' routine investigation into Mr. Reardon's claim, and what is more, it was created more than a year before the parties submitted the claim to appraisal. It is unclear how Auto-Owners can now contend that this document was created in anticipation of litigation on October 21, 2019 when Auto-Owners *agreed* to Mr. Reardon's October 17, 2019 appraisal demand. And again, because the claim was accepted and covered by Auto-Owners, appraisal was simply being used as a process to *avoid litigation* and to determine the amount of the loss. Simply, this document is discoverable and should be produced.

The same is true with respect to the second withheld document, the April 22, 2019 correspondence from Plaintiff to Donan, which is a forensic engineering and investigation firm that was hired as an *independent* adjuster to evaluate Mr. Reardon's claim. (*See Id.*, at No. 2). This document concerns Donan's analysis of the claim itself. Since this document was created only days after the subject storm, it is highly unlikely that any outside counsel was retained by this point or was involved in the creation of this correspondence. As with the first withheld document, this independent adjuster's analysis constitutes Auto-Owners' common practice of investigating claims. Simply, it is unclear how this analysis can be anything other than Auto-Owners' routine investigation, and accordingly, it is discoverable under the law. The bottom line is that Auto-Owners is attempting to hide correspondence that may provide evidence of its bad faith and unfair claims handling of Mr. Reardon's claim.

Finally, Auto-Owners also redacted portions of its internal claim notes that reflect Auto-Owners' analysis of Mr. Reardon's claim. (*See Id.*, at No. 3; *see also* Auto-Owners' Redacted[1] Claim Notes, attached as ***Exhibit 6***). This question seems most obvious of all of the disputed

---

[1] The referenced redactions are located within ***Exhibit 6*** at Pages 2, 6, 10, 11, 30, 33, 34, 50, 51, 52, and 53.

material, as claim notes are almost always created as a "routine investigation of a possibly resistible claim." *See Odyssea Marine*, 2014 U.S. Dist. LEXIS 69063, at *11. Accordingly, the claim notes redacted under this alleged work product privilege should be produced.

## V. CONCLUSION

For the foregoing reasons, Mr. Reardon respectfully requests that this Court enter an Order compelling Auto-Owners to produce those documents within in its Privilege Log that were improperly withheld based on an alleged work product privilege. Specifically, Mr. Reardon asks this Court to compel the October 21, 2019 adjuster internal report prepared by Jacob Flippin and the April 22, 2019 correspondence from Plaintiff to Donan regarding its analysis of the claim. Finally, Mr. Reardon requests that the Court order production of unredacted claim notes concerning Auto-Owners' analysis of this matter.

                          Respectfully submitted,

                          McWHERTER SCOTT & BOBBITT, PLC

                          s/ Jonathan L. Bobbitt
                          JONATHAN L. BOBBITT #23515
                          jonathan@msb.law
                          J. BRANDON McWHERTER #21600
                          brandon@msb.law
                          NANCY R. STEER #33562
                          nan@msb.law
                          341 Cool Springs Blvd., Suite 230
                          Franklin, Tennessee 37067
                          T: (615) 354-1144
                          F: (731) 664-1540

                          *Attorneys for Defendant / Counter-Plaintiff*

## **CERTIFICATE OF SERVICE**

I, the undersigned, do hereby certify that a true and exact copy of the foregoing **DEFENDANT/COUNTER-PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO COMPEL** has been mailed electronically via the Court's Electronic Filing System to the following on this the 26th day of May 2021:

Benjamin E. Goldammer
Michael A. Johnson
KAY GRIFFIN, PLLC
222 Second Avenue North, Suite 340-M
Nashville, Tennessee 37201

s/ Jonathan L. Bobbitt